EX PARTE TIGER.

Opinion delivered October 1, 1898.

1. *Indictment for Offenses Against Laws of Creek Nation.*

The word "indict" as used in the constitution of the Creek Nation, does not have the ordinary common law meaning, but means simply that the prosecuting attorney shall file a written accusation charging a party with an offense against the Creek laws.

2. *Indictment—Failure to Sign.*

The fact that the information filed by the prosecuting attorney of the Creek Nation was not signed by him was but a mere informality which not having been objected to was cured by the verdict.

3. *Creek Courts—Errors in Proceedings—Jurisdiction of the United States Court to Review.*

The United States Court in the Indian Territory has no jurisdiction to review errors or informalities in the indictment or in the proceedings of a Court of the Creek Nation.

4. *Grand Jury—Creek Nation.*

There is no such thing as a grand jury known to the Constitution of the Creek Nation.

Appeal from the United States Court for the Northern District.

WM. M. SPRINGER, Judge.

Petition for habeas corpus on behalf of William Tiger. Judgment refusing petition. Petitioner appeals. Affirmed.

Petitioner filed his petition for habeas corpus, showing that he had been tried by the authorities of the Creek Nation for the murder of one S. McIntosh, and that he had been convicted and sentenced to be shot, and alleged, among other things, as a reason why the prayer of his petition should be granted, that he had been tried without being indicted by a grand jury, contrary to section 4 of article 4, of the constitution of the Creek Nation. Writ granted. On trial, the evidence showed that he was not indicted by a grand jury, and that there is no such thing as a grand jury known to the Creek laws. It also shows that the so called indictment or writing on which he was tried was not signed. Article 4, § 4, of the constitution of the Creek Nation, reads as follows: "The prosecuting attorney shall be appointed by the principal chief, by and with the consent of the national council. It shall be his duty to indict and prosecute all offenders against the laws of his district." A. P. McKellop testifies that an indictment was prepared by the prosecuting attorney. He was asked by the court who signed an indictment and his answer was, "The prosecuting attorney." He was then asked if there was any signature to the indictment on which petitioner was tried, and he said there was not. He also stated that there was no law in the Creek Nation requiring the prosecuting attorney to sign an indictment. He also stated that it was not customary for prosecuting attorneys to sign indictments. The court refused to grant the prayer of petitioner. On the same day petitioner filed a motion for a new trial, which was overruled. He had his exceptions

noted, prayed an appeal, presented his bill of exceptions and had the same signed, filed, and made a part of the record of the case. The specifications of error are as follows: (1) In not holding that article 4, § 4, of the Creek constitution, required the presentation of an indictment by a grand jury against him before he could lawfully be tried for the crime of murder. (2) In not holding that, the trial of petitioner by the Creek Nation, without an indictment having been first presented against him by a grand jury was void. (3) In not holding that, even if the Creek constitution did not require the presentation of an indictment by a grand jury, the so-called indictment on which the petitioner was tried was void, because it was not signed by the prosecuting attorney.

*De Roos Bailey, W. T. Fears, and S. S. Fears,* for petitioner.

*Stuart, Lewis & Gordon,* for respondent.

CLAYTON, J. The first two specifications of error may be considered together. They are to the effect that the petitioner was put upon his trial on a charge of murder without an indictment having been presented against him by a grand jury. There is no such a thing as a grand jury known to the constitution or laws of the Creek Nation. A grand jury has never been impaneled by the tribal courts of that nation. Article 4, § 4, of the constitution of the Creek Nation, however, provides that it shall be the duty of the prosecuting attorney to indict and prosecute all offenders against the laws of his district. It is contended by the counsel for the petitioner that the word "indict," as here used in the Creek constitution, must be given its common-law signification, and, as at common law no indictment could be found or presented except through the interposition of a grand jury, that the Creek prosecuting attorney could not indict except through the interposition of a grand jury. If

Creek Nation.
Grand Jury.

the Creek Nation derived its system of jurisprudence through the common law, there would be much plausibility in this reasoning. But they are strangers to the common law. They derive their jurisprudence from an entirely different source, and they are as unfamiliar with common-law terms and definitions as they are with Sanskrit or Hebrew. With them, "to indict" is to file a written accusation charging a person with crime; and, when they ingrafted in the constitution that it should be the duty of the prosecuting attorney to indict and prosecute all offenders against their laws, they simply meant that he himself should write out and file this written accusation, and upon the charge which he should so prepare and file he should prosecute. As an evidence of this, they have ever since the adoption of this constitution pursued this course, and neither their constitutional conventions nor legislatures have provided any other method for presenting to the courts offenders against their laws.

*Creek Laws. Indictment.*

The fact that the information filed by the prosecuting attorney of the Creek Nation was not signed by him does not affect the verdict, or the judgment of the court rendered upon it. At most, it was but a mere informality, which, not having been objected to in the Creek courts before trial, was cured by verdict. But, whether it was or not, the Creek courts were alone competent to pass upon any errors or informalities either in the indictment or in the proceedings; and the United States courts cannot, by habeas corpus or other process, interfere with their absolute control over the arrests, presentment, trial and punishment of their own people, as the law then stood. The case of Talton v. Mayes, 163 U. S. 376; 16 Sup. Ct. 986, is conclusive of this case. The supreme court of the United States in that case decide: (1) The crime of murder, committed by one Cherokee Indian upon the person of another within the jurisdiction of the Cherokee Nation, is not an offense against the United States,

*Creek Laws. Signing Information.*

*Review of Creek Laws. Jurisdiction of U. S. Court.*

but an offense against the local laws of the Cherokee Nation; (2) the provision as to the grand jury in the fifth amendment to the federal constitution has no application to criminal procedure in the courts of the Cherokee Nation, whose powers of local self-government were enjoyed before the constitution was made; (3) the finding of an indictment by a grand jury of less than 13 does not violate the due-process clause of the constitution; (4) the question of the repeal of one statute of the Cherokee Nation by another, and as to what is the existing law of that nation as to the constitution of a grand jury, are solely for the courts of that nation to decide, without any right of review in federal courts by habeas corpus proceedings. Let the judgment of the court below be affirmed.

TOWNSEND, J., concurs.