Albert J. BARTA, John E. Barta and Charles K. Failing, Appellants,

v.

OGLALA SIOUX TRIBE OF PINE RIDGE RESERVATION OF SOUTH DAKOTA, and James Iron Cloud, Appellees.

Claire COOMES and A. R. Davies, Appellants,

v.

OGLALA SIOUX TRIBE OF PINE RIDGE RESERVATION OF SOUTH DAKOTA, and James Iron Cloud, Appellees.

John GLOVER and Merton Glover, Appellants,

v.

UNITED STATES of America, Appellee.

Jack LEWIS and Marvin Spracklin, Appellants,

v.

UNITED STATES of America, Appellee.

Cyrus PORCH and William Porch, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 15967–15971.

United States Court of Appeals Eighth Circuit.

Oct. 15, 1958.

See, also, D.C., 146 F.Supp. 917.

John C. Farrar, Rapid City, S. D. (Gunderson, Farrar & Carrell, Rapid City, S. D., on the brief), for appellants.

Richard Schifter, Washington, D. C. (Harold R. Hanley, Rapid City, S. D., Daniel M. Singer, Strasser, Spiegelberg, Fried & Frank, Washington, D. C., and Hanley, Costello & Porter, Rapid City, S. D., on the brief), for appellees Oglala Sioux Tribe of Pine Ridge Reservation of South Dakota et al.

Robert S. Griswold, Jr., Attorney, Department of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Clinton G. Richards, U. S. Atty., Lyle E. Cheever, Asst. U. S. Atty., Sioux Falls, S. D., and S. Billingsley Hill, Attorney, Department of Justice, Washington, D. C., on the brief), for appellee United States.

Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.

GARDNER, Chief Judge.

Appellants at all times here material were lessees of certain tribal trust lands in the Pine Ridge Indian Reservation located within the geographical boundaries of the State of South Dakota. The Pine Ridge Indian Reservation is the home of the Oglala Sioux Tribe of Indians. The Oglala Sioux Tribal Council by resolution levied a license tax on non-members of the tribe leasing trust lands on the reservation, of three cents per acre per annum for grazing land and fifteen cents per acre per annum for farm land. Appellants were lessees of tribal trust lands. Having failed and refused to pay the tax so levied during the period commencing November 1, 1953, these five actions were brought to recover the taxes alleged to be due. Two of the actions were brought in the name of the Oglala Sioux Tribe while the other three were brought in the name of the United States of America on behalf of the Oglala Sioux Tribe. The actions were consolidated for purposes of trial and at the close of all the evidence, on motions of plaintiffs, the court directed verdicts in favor of the plaintiffs for the amounts of the taxes severally alleged to be due by appellants. We shall hereinafter refer to appellants as defendants.

Defendants then moved for judgments notwithstanding the verdicts. Following the argument on which, the court announced, "The motions will be denied", and thereupon, pursuant to the verdicts as so directed, the court on October 10, 1957, entered separate money judgments against the defendants named in the actions brought by the tribe.

██ In the two actions brought by the tribe notices of appeal from the judgments entered October 10, 1957, were filed November 29, 1957, or twenty days beyond the time provided in Rule 73(a), Federal Rules of Civil Procedure, 28 U.S. C.A. Rule 73(a), Federal Rules of Civil Procedure, requires that notice of appeal, except where the United States is a party, shall be filed within thirty days from entry of the judgment appealed from. When, on October 10, 1957, the court entered money judgments, appropriate docket entries were made on the same day. On October 30, 1957, the clerk entered an order recapitulating the denial of defendants' motions for judgments notwithstanding the verdicts and for new trials as pronounced and entered on October 10, 1957. In resisting the motions to dismiss these two appeals defendants urge that the formal order entered by the clerk on October 30, 1957, was in fact the judgment of the court and hence their notices of appeal were filed within the time limited by Rule 73(a), Federal Rules of Civil Procedure. We think this contention untenable. United States v. Schaefer Brewing Co.,

356 U.S. 227, 78 S.Ct. 674, 678, 2 L.Ed.2d 721. In United States v. Schaefer Brewing Co., supra, the Supreme Court, speaking through Mr. Justice Whittaker, said:

"Therefore, when, as here, the action is for money only * * * it is necessary to determine whether the language of the opinion embodies the essential elements of a judgment for money and clearly evidences the judge's intention that it shall be his final act in the case. If it does so, it constitutes his final judgment * * *. When all of these elements clearly appear final judgment has been both pronounced and entered, and the time to appeal starts to run under the provisions of Rule 73(a)."

It is to be noted in this connection that the notices of appeal describe as the judgments appealed from the judgments entered October 10, 1957. If, as contended by defendants, the orders entered by the clerk on October 30, 1957, were in fact the judgments of the court then those judgments have not been appealed from. Filing of notice of appeal within the time prescribed is jurisdictional. St. Luke's Hospital v. Melin, 8 Cir., 172 F.2d 532; Marten v. Hess, 6 Cir., 176 F.2d 834. Appeals in Nos. 15,967 and 15,968 are therefore dismissed.

There remains for consideration the issues raised by defendants in the actions brought by the United States on behalf of the Oglala Sioux Tribe. In seeking reversal in Nos. 15,969, 15,970 and 15,971 defendants in substance contend: (1) that the Federal District Court was without jurisdiction over a suit by the United States to collect a tax imposed by a tribe organized under Federal law on the use of Indian trust lands by non-members of the tribe, and (2) that a tax on the use of Indian trust lands imposed by an Indian tribe on non-members of the tribe violates the Fifth and Fourteenth Amendments to the Constitution.

Section 1345, Title 28 U.S.C. in part provides that "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States". Of course, if there is no obligation on behalf of the United States to the public or any individual, or it has no interest of its own, it could not maintain such an action. United States v. San Jacinto Tin Co., 125 U.S. 273, 8 S.Ct. 850, 31 L.Ed. 747. Where, however, the government has an obligation to its Indian wards as well as an interest of its own in the trust property and the tax involved, it may maintain the action. Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820; United States v. Sandoval, 231 U.S. 28, 34 S.Ct. 1, 58 L.Ed. 107; United States v. Candelaria, 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023; United States v. Board of Com'rs of Grady County, Okl., 10 Cir., 54 F.2d 593. In Heckman v. United States, supra [224 U.S. 413, 32 S.Ct. 431], it is said:

"During the continuance of this guardianship, the right and duty of the nation to enforce by all appropriate means the restrictions designed for the security of the Indians cannot be gainsaid. While relating to the welfare of the Indians, the maintenance of the limitations which Congress has prescribed as a part of its plan of distribution is distinctly an interest of the United States. A review of its dealings with the tribe permits no other conclusion. Out of its peculiar relation to these dependent peoples sprang obligations to the fulfillment of which the national honor has been committed. 'From their very weakness and helplessness, so largely due to the course of dealing of the Federal government with them and the treaties in which it has been promised, there arises the duty of protection, and with it the power. This has always been recognized by the Executive and by Congress and by this court, whenever the question has arisen.' United States v. Kagama, 118 U.S. 375, 384, 6 S.Ct. 1109, 30 L.Ed. 228, 231.

"This national interest is not to be expressed in terms of property, or

to be limited to the assertion of rights incident to the ownership of a reversion or to the holding of a technical title in trust."

In United States v. Board of Com'rs of Grady County, Okl., supra, [54 F.2d 595] in sustaining the right and authority of the United States to maintain an action on behalf of an Indian tribe, the court said:

"There was no tenable objection to the general jurisdiction of the District Court. It was expressly conferred by title 28, § 41, subd. 1, of the U. S. Code, 28 U.S.C.A. § 41 (1), in providing that the District Courts shall have jurisdiction, 'first, of all suits of a civil nature, at common law or in equity, brought by the United States. * * *'"

Here there was a right of the Indians to levy this tax on non-members of the tribe using these lands. Thus in Iron Crow v. Oglala Sioux Tribe of Pine Ridge Res., 8 Cir., 231 F.2d 89, 99, we said:

"Inasmuch as it has never been taken from it, the defendant Oglala Sioux Tribe possesses the power of taxation which is an inherent incident of its sovereignty. The tribe has seen fit to give orderly implementation to that power through the adoption of a constitution which, among other things, has specifically provided for the levy of taxes. Such action was taken in accordance with the provisions of the Indian Reorganization Act, 1934, 48 Stat. 987, 25 U.S.C.A. § 476.

"We conclude from the original precept of tribal sovereignty and the fact that the power of the Oglala Sioux Tribe to impose the tax or license in question has not been pretermitted by any federal statute or agency ruling thereunder, but, to the contrary, has been implemented by the Indian Reorganization Act, supra, that such power still exists."

■■ It was the right, if indeed not the duty, of the United States to take what-ever action might be necessary to enforce this right and thus protect its wards. Quite aside from this, however, the United States had an interest of its own in the trust property and the tax involved. Legal title to these lands was retained in the United States. Having in mind that we have sustained the right of the Indian tribe to levy the so-called tax here involved, it will be observed that the resolution providing for the tax also provided for payment of fees to the Treasurer of the United States. The tax, when collected, is devoted to tribal governmental purposes, supplementing funds which the United States devotes to that purpose, and to that extent the United States has a pecuniary interest in the collection of this tax. We are satisfied that the government has a maintainable interest in these actions, entitling it to prosecute them in its own name even though the tribe may also maintain such actions. Creek Nation v. United States, 318 U.S. 629, 63 S.Ct. 784, 87 L.Ed. 1046.

■■ It is argued that even though the tribe may have the statutory authority to levy such a tax as is here involved, nevertheless the tax here levied is violative of the constitutional rights of defendants. The tribe by provisions of its treaty with the United States has power to provide for the admission of non-members of the tribe onto the reservation. Having such power, it has the authority to impose restrictions on the presence of non-members within the reservation. Buster v. Wright, 8 Cir., 135 F. 947. The contention is that the levy of the tax was violative of certain of defendants' Constitutional rights under the Fifth and Fourteenth Amendments to the Constitution. The Fourteenth Amendment places limitations on legislative actions by the states. Slaughter-House Cases, 16 Wall. 36, 83 U.S. 36, 21 L.Ed. 394. The Indian tribes are not, however, states and these Constitutional limitations have no application to the actions, legislative in character, by Indian tribes. Neither may the Fifth Amendment be invoked as against any legisla-

**557**

tive action of the Indian tribes. Talton v. Mayes, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196. The matter is quite fully discussed in Cohen's Handbook of Federal Indian Law (1942) at page 124 where it is said:

"Where, however, the United States Constitution levies particular restraints upon federal courts or upon Congress, these restraints do not apply to the courts or legislatures of the Indian Tribes. [United States v. Seneca Nation of New York Indians, 274 F. 946; (D.C.W. D.N.Y., 1921); Memo. Sol. I.D., Aug. 8, 1939 (Lower Brule Sioux).] Likewise, particular restraints upon the states are inapplicable to Indian Tribes."

And at page 181 it is said:

"Many important prohibitions, including the Bill of Rights of the Federal Constitution, are limitations only on the power of the Federal Government. Other provisions limit the activities of state governments only, or of the federal and state government, and hence are inapplicable to Indian tribes, which are not creatures of either the federal or state governments. (Citing cases)

"The provisions of the Federal Constitution protecting personal liberty and property rights do not apply to tribal action. [Op. Sol. I. D., M. 27810, Oct. 23, 1934; Op. Sol. I. D., M. 27810, Dec. 13, 1934.] In Talton v. Mayes [163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896), discussed in Memo. Sol. I. D., Aug. 8, 1938], the court held that the Fifth Amendment of the Federal Constitution, requiring indictment by a grand jury in most infamous crimes, does not apply to the acts of a tribal government."

And at page 267 it is said:

"It would seem that the tribal taxing power is not subject to limitations imposed upon state or federal legislation by the Federal Constitution."

The constitutional validity of a tax similar to the tax here involved was considered in Morris v. Hitchcock, 194 U.S. 384, 24 S.Ct. 712, 716, 48 L.Ed. 1030. In the course of the opinion in that case the court said the levying of the tax "was not the exercise of arbitrary power, as claimed, and that neither the act nor the regulations in any respect violate the Constitution of the United States".

■■ It is finally argued that the tax is violative of defendants' rights in that it constitutes taxation without representation. If it be conceded that the act of the tribe in levying this tax constitutes taxation without representation that alone is certainly not fatal. The taxability of property is not dependent upon the residence of the owner of the property. The property rights of an alien or non-resident are taxable the same as the property of residents who may be said to have representation. As said in Thomas v. Gay, 169 U.S. 264, 18 S.Ct. 340, 345, 42 L.Ed. 740, cited by defendants:

"Thus it has been held that personal allegiance has no necessary connection with the right of taxation; an alien may be taxed as well as a citizen. (Citing cases) So, likewise, it is settled law that the property, both real and personal, of non-residents may be lawfully subjected to the tax laws of the state in which they are situated."

Many taxes might be similarly characterized and it cannot be said that the license tax was the exercise of arbitrary power. It was levied uniformly on all lessees of these tribal trust lands.

We have considered all other contentions urged by defendants but think them without merit. The judgments in Nos. 15,969, 15,970 and 15,971 are therefore affirmed.