**UNITED STATES of America, Plaintiff,**

v.

**Merrill KARLEN, Defendant.**

**Civ. No. 78–3044.**

United States District Court, D. South Dakota, C. D.

Sept. 12, 1979.

John Ulrich, Asst. U. S. Atty., Sioux Falls, S. D., Tom W. Echohawk, Atty., Dept. of Justice, Land and Natural Resources Div., Washington, D. C., for U.S.A.

Wally Eklund, Johnson, Johnson & Eklund, Gregory, S. D., for Karlen.

## MEMORANDUM OPINION ON GOVERNMENT'S MOTION TO DISMISS COUNTERCLAIM

DONALD J. PORTER, District Judge.

### CASE SUMMARY

On March 16, 1979, the United States filed a five-count civil complaint against the defendant, Merrill Karlen. In the first three counts, the United States, in its own capacity and as trustee for the Lower Brule Sioux Indian Tribe and certain individual owners, sought damages from the defendant for breach of a lease agreement entered into by the defendant and the Tribal Chairman of the Lower Brule Sioux Indian Tribe and the Superintendent of the Pierre Indian Agency[1] on behalf of the individual owners. In the two other counts, the United States sought damages under 25 U.S.C. § 179 for separate trespasses by livestock owned by

the defendant on land which the United States owns and holds in trust on behalf of the Lower Brule Sioux Tribe.

The defendant answered, denying the complaint, and counterclaiming against the United States as trustee for the Lower Brule Sioux Tribe for an alleged trespass on defendant's land by livestock and game owned by the Tribe. The United States moved to dismiss the counterclaim, and a hearing was held on the motion on August 8, 1979. After due consideration of the briefs of the parties, and of the oral argument, it is concluded that the motion of the United States to dismiss the counterclaim should be granted. It is so ordered.

### ISSUES

1. Has the United States consented to be sued by filing the complaint in this action?

2. Has any statute waived sovereign immunity in this action?

I

■ An analysis of the law governing the disposition of this counterclaim must begin with reference to the doctrine of sovereign immunity. It goes without saying that the United States may be sued only to the extent that it has lowered the bar of sovereign immunity. Under certain circumstances, the filing of a lawsuit does have the effect of waiving this doctrine. This waiver, however, applies only to "counterclaims arising out of the same transaction or occurrence which is the subject matter of the suit," *In re Oxford Marketing, Ltd.*, 444 F.Supp. 399 (N.D.Ill.1978), or as they are frequently denominated, "recoupments". This consent to be sued does not authorize permissive counterclaims arising out of unrelated transactions. *In re Oxford Marketing, Ltd., supra*, and cases cited therein. "The fact that the counterclaims are authorized by the Federal Rules of Civil Procedure does not establish the right of the court to entertain a counterclaim violative of the sovereign immunity doctrine." *Unit-*

---

1. Bureau of Indian Affairs.

*ed States v. Longo*, 464 F.2d 913 (8th Cir. 1972).

■ Counsel for defendant conceded at oral argument that the counterclaim here could not be said to arise from the same transaction as the United States' complaint. The United States has pointed out in that regard that the counterclaim deals with an entirely separate trespass on an entirely separate parcel of land than that dealt with in the complaint. Thus, the counterclaim is not a compulsory counterclaim, and fails to come within the recoupment exception of sovereign immunity.

■ Defendant claims that since the complaint has been brought by the United States in its "representative" capacity, as Trustee for the Tribe, the normal rules of sovereign immunity do not apply. Defendant contends that the real plaintiff in the complaint (and thus the real defendant to the counterclaim) is the Tribe, not the United States, and that permissive counterclaims may be asserted in suits brought by a Tribe. This position is clearly incorrect. In *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940), the United States filed a claim for two Indian nations for royalties due under coal leases. The Missouri District Court allowed defendant's crossclaim. In holding that the Missouri judgment was void to the extent of this crossclaim, the Court said that "Indian Nations are exempt from suit without Congressional authorization. It is as though the immunity which was theirs as sovereigns passed to the United States for their benefit, as their tribal properties did. Possessing this immunity from direct suit, we are of the opinion it possesses a similar immunity from cross-suits." 309 U.S. at 512–13, 60 S.Ct. at 656. Just as it is settled law that an initial lawsuit may not be brought indirectly against a Tribe by suing Tribal officers or the United States as Trustee or Guardian of the Tribe, *Seneca Constitutional Rights Organization v. George*, 348 F.Supp. 48 (W.D. N.Y.1972), *Barnes v. United States*, 205 F.Supp. 97 (D.Mont.1962), *see also Adams v. Murphy*, 165 F. 304 (8th Cir. 1908), so it is

clear that a permissive counterclaim may not be indirectly maintained against a Tribe by pointing it at the United States as Trustee for the Tribe.

## II

This brings the Court to the second question of whether a statute has waived sovereign immunity so that this counterclaim may be brought. The guiding principle in deciding this issue is that a waiver of sovereign immunity

> " 'cannot be implied but must be unequivocally expressed.' *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), quoting, *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) . . . In the absence . . . of any unequivocal expression of contrary legislative intent, we conclude that suits against the tribe . . . are barred by its sovereign immunity from suit."

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106.

Defendant claimed for the first time at oral argument that 28 U.S.C. § 1346 constituted a waiver of the Tribe's sovereign immunity. Though the defendant pointed to no particular section of the statute in support of this contention, this Court rules that neither § 1346(a)(2) or (b) can be construed to waive the Tribe's immunity.

■ Under § 1346(a)(2), the district court has jurisdiction of a civil action against the United States of up to $10,000 where that action is "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department." The counterclaim fails to come under this section for at least two reasons. First, defendant argues that the alleged trespass of Tribal cattle on his land was an uncompensated taking under the Fifth Amendment, and the counterclaim thus becomes an action "founded . . . upon the Constitution." This neglects the fact that the "United States Constitution does not limit the powers of tribal government." *Janis v. Wilson*, 521 F.2d 724 (8th Cir. 1975);

*Talton v. Mayes*, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896).

Second, § 1346(a)(2) addresses only claims "against the United States"—a distinct, sovereign government. There is nothing anywhere in the statute to indicate that Congress intended the waiver to encompass any more than the one sovereign named— the United States. The Indian tribes in this country are separate governments in their own right, possessed of their own attributes of sovereignty. A recent Supreme Court case, *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), reiterated the familiar principle that the "powers of Indian tribes are, in general, '*inherent powers of a limited sovereignty which has never been extinguished.*'" (emphasis in original). Among these inherent attributes of Tribal sovereignty is, as the case of *United States Fidelity & Guaranty Co., supra*, held, the doctrine of sovereign immunity. This protection was not given to the Tribe—it came into creation with the Tribe before the coming of the Europeans. In using the doctrine, the Tribe "does so as part of its retained sovereignty and not as an arm of the Federal Government." *United States v. Wheeler*, 435 U.S. at 328, 98 S.Ct. at 1089.

While the United States could, if it wanted, remove the doctrine's protection from the Tribe, a statute such as § 1346(a)(2), which speaks only of the "United States" and no other government, does not do this. "'[S]tatutes in derogation of sovereignty are strictly construed . . . .'" *Bruno v. United States*, 547 F.2d 71 (8th Cir. 1977). A waiver of the immunity of the United States alone cannot also waive Tribal immunity in the absence of the "unequivocal expression of legislative intent" that *Santa Clara Pueblo* contemplated. This Court finds nothing in § 1346(a)(2) to constitute this "unequivocal expression", and thus holds that the section does not permit this counterclaim to be brought.

■ An argument that the counterclaim can be maintained under § 1346(b) falls for similar reasons. This gives the district court "jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." The critical words here are "employee of the Government". As the passage in *Wheeler* just quoted indicates, the acts of a Tribe are done "as part of its retained sovereignty and not as an arm of the Federal Government." No contention can be successfully made that the Tribe, in the alleged grazing of its cattle on defendant's land, was acting as an agent of the United States. As the Court in *Haile v. Saunooke*, 246 F.2d 293 (4th Cir. 1957), cert. denied 355 U.S. 893, 78 S.Ct. 268, 2 L.Ed.2d 191 (1957), held, § 1346(b) authorizes suit only against United State's employees, not "against wards of the government nor against the government as their guardians for damages resulting from their acts."

■ The defendant also made a contention at oral argument that 25 U.S.C. § 229 waived sovereign immunity. That statute, enacted in 1834, refers to a claim procedure allowing those victimized by Indian depredations to apply for "satisfaction" to the superintendent of the Tribe. The Superintendent would apply to the Tribe, and in the event "satisfaction" was not made in twelve months, the matter would be referred to the Commissioner of Indian Affairs. This procedure is obviously non-binding on the Tribe, and makes no provision for what is to happen after referral to the Commissioner. No reference to any sort of lawsuit is made and, again, this Court is forced to conclude that § 229 lacks the "unequivocal expression of legislative intent" necessary to waive the Tribe's sovereign immunity.

An order will therefore be entered granting the United States motion to dismiss defendant's counterclaim.