DOLGENCORP INC., Dollar General Corporation and Dale Townsend, Plaintiffs

v.

The MISSISSIPPI BAND OF CHOCTAW INDIANS, The Tribal Court of the Mississippi Band of Choctaw Indians, The Honorable Christopher A. Collins (In his Official Capacity), and John Doe, A Minor, By and through his Parents and Next Friends John Doe, Sr. and Jane Doe, Defendants.

Civil Action No. 4:08CV22TSL–FKB.

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 21, 2011.

Edward F. Harold, Fisher & Phillips, LLP, New Orleans, LA, for Plaintiffs.

Carl Bryant Rogers, Van Amberg, Rogers, Yepa, Abeita and Gomez, LLP, Santa Fe, NM, Donald L. Kilgore, Mississippi Band of Choctaw Indians, Choctaw, MS, Brian D. Dover, Brian D. Dover, Attorney, Jonesboro, AR, for Defendants.

*MEMORANDUM OPINION*
*AND ORDER*

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiffs Dolgencorp Inc. and Dollar General Corporation (Dolgen) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the separate cross-motions of defendants The Mississippi Band of Choctaw Indians, The Tribal Court of the Mississippi Band of Choctaw Indians and the Honorable Christopher A. Collins (in his official capacity) (collectively the Tribal defendants), and of John Doe, a minor, by and through his parents and next friends, for summary judgment. The court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that Dollar General's motion should be denied, and the cross-motions of defendants granted.

Plaintiff Dolgen operates a Dollar General store on trust land on the Choctaw Indian Reservation in Choctaw, Mississippi. Dolgen occupies the premises pursuant to a lease agreement with the Mississippi Band of Choctaw Indians (the Tribe) and a business license issued by the Tribe. At all relevant times, Dale Townsend was employed as a store manager. According to defendants, in 2003, defendant John Doe, a minor tribe member, was molested by Townsend during a time when Doe was assigned to work at the Dollar General store as part of the Tribe's Youth Opportunity Program (TYOP), a work experience program run by the Tribe pursuant to which tribal youth were placed with local businesses to gain work experience. Doe and his parents filed suit in Choctaw Tribal court against Townsend, and against Dolgen, seeking actual and punitive damages. In that action, they seek to hold Dolgen vicariously liable for Townsend's actions and directly liable for its own alleged negligence in the hiring, training and supervision of Townsend.

In the tribal courts, Dolgen and Townsend challenged tribal jurisdiction. Their challenge was rejected, following which Dolgen instituted the present action seeking a determination that there is no tribal jurisdiction over the Does' complaint. *See Williams–Willis v. Carmel Financial Corp.,* 139 F.Supp.2d 773, 777 (S.D.Miss. 2001) (tribal courts are to be given first opportunity to determine their own jurisdiction where colorable basis for such jurisdiction exists but federal courts ultimately have jurisdiction to determine the limits of a tribal court's jurisdiction) (citations omitted). Initially, they sought a preliminary injunction against further proceedings in Tribal Court pending a final determination by this court of the Tribal Court's jurisdiction over the Does' claims against them. The court denied that motion based on its conclusion as to the potential for tribal jurisdiction under the *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), "consensual relationship" exception. *See Dolgen Corp., Inc. v. The Mississippi Band of Choctaw Indians,* Civ. Action No. 4:08cv22TSL-FKB, 2008 WL 5381906, 6 (S.D.Miss. Dec. 19, 2008). Dolgen has now moved for summary judgment, contending that as a matter of law, in light of the Supreme Court's explication of *Montana's* "consensual relationship" exception in *Plains Commerce Bank v. Long Family Land and Cattle Co., Inc.,* 554 U.S. 316, 128 S.Ct. 2709, 171 L.Ed.2d 457 (2008), the Tribe cannot establish the existence of tribal jurisdiction over the Does' claims. The Tribe, and separately the Does, oppose plaintiffs' motion, and have moved for summary judgment, contending that the evidence and law establish that the Tribal Court does have jurisdiction over the Does' tort claims under *Montana's* consensual relationship exception.

Under *Montana*, and its progeny, there is a presumption against tribal civil jurisdiction over non-Indians. *See Montana*, 450 U.S. at 565, 101 S.Ct. 1245 (setting forth "general proposition" that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe"); *Plains Commerce Bank*, 554 U.S. at 329–30, 128 S.Ct. 2709. This is so because while the tribes have authority to exercise civil jurisdiction over their own members, "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation." *Montana*, 450 U.S. at 564, 101 S.Ct. 1245 (citations omitted). Generally, therefore, "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Id.* at 565, 101 S.Ct. 1245.

The Court in *Montana* identified two exceptions to this general rule against tribal authority over nonmembers. First, "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id.* Second, "[a] tribe may ... exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566, 101 S.Ct. 1245. The parties agree that under *Montana*, because both Dolgen and Townsend are nonmembers of the Tribe, one of Montana's two exceptions must apply in order for the Tribe to assert regulatory authority over their actions.

In its previous opinion holding the second *Montana* exception inapplica-ble, the court wrote that the Tribal Court's assuming jurisdiction over the Does' claim against Dolgen or Townsend could not reasonably be said to be necessary to protect tribal self-government or control internal relations. *Dolgen*, 2008 WL 5381906 (citing *County of Lewis v. Allen*, 163 F.3d 509, 515 (9th Cir.1998) (en banc) (observing that "the tribal court plaintiff's status as a tribal member alone cannot satisfy the second exception. Nor is it sufficient to argue ... that the exception applies because the tribe has an interest in the safety of its members.")). While the court's ultimate conclusion that the second exception is not a basis for jurisdiction in this case stands, the court's characterization of the basis for this conclusion was inaccurate. Discussing the second exception, the Court in *Plains Commerce Bank* wrote:

> The second exception authorizes the tribe to exercise civil jurisdiction when non-Indians' "conduct" menaces the "political integrity, the economic security, or the health or welfare of the tribe." *Montana*, 450 U.S., at 566, 101 S.Ct. 1245. The conduct must do more than injure the tribe, it must "imperil the subsistence" of the tribal community. *Ibid.* One commentator has noted that "th[e] elevated threshold for application of the second *Montana* exception suggests that tribal power must be necessary to avert catastrophic consequences." *Cohen* § 4.02[3][c], at 232, n. 220.

554 U.S. 316, 341, 128 S.Ct. 2709, 171 L.Ed.2d 457 (2008). The tort claims at issue in the case at bar do not fit within this exception. As the court in *Philip Morris USA, Inc. v. King Mountain Tobacco Co., Inc.* observed,

> To some extent, it can be argued that torts committed by or against Indians on Indian land always "threaten[ ] or ha[ve] some direct effect on the political

integrity, the economic security, or the health or welfare of the tribe." [*Montana*, 450 U.S. at 566, 101 S.Ct. 1245]. But this generalized threat that torts by or against its members pose for any society, is not what the second *Montana* exception is intended to capture. *See Atkinson*, 532 U.S. at 657 n. 12, 121 S.Ct. 1825 ("*Montana's* second exception can be misperceived. The exception is only triggered by nonmember conduct that threatens the Indian tribe; it does not broadly permit the exercise of civil authority wherever it might be considered necessary to self-government." (internal quotations omitted)). Rather, the second exception envisions situations where the conduct of the nonmember poses a direct threat to tribal sovereignty. *Id.*

569 F.3d 932, 943 (9th Cir.2009).

■ In this case, tribal jurisdiction over the Does' claims cannot be sustained under the second *Montana* exception, not because tribal jurisdiction is not necessary to protect tribal self-government or control internal relations, but rather because the nonmember conduct at issue does not " 'imperil the subsistence' of the tribal community" and tribal jurisdiction thus cannot be necessary to avert catastrophic consequences.

■ As to the first *Montana* exception, the court previously indicated that while it appeared a consensual relationship existed between Dolgen and the Tribe and John Doe by virtue of their participation in the Tribal Youth Opportunity Program, it was not clear whether it was the type of consensual relationship contemplated by *Montana's* first exception. It now appears undisputed that Dale Townsend, purportedly on behalf of Dolgen, agreed with the Tribe to participate in the Tribal Youth Opportunity Program, and that based on such agreement, John Doe was placed in the Dollar General store under Townsend's direct supervision.[1] Doe did not thereby become an employee of Dolgen, but he functioned as an unpaid intern or apprentice, receiving job training from Dolgen and in turn provided free labor to Dolgen for the period of his assignment. In the court's opinion, as a consequence of this arrangement, Dolgen implicitly consented to the jurisdiction of the Tribe with respect to matters connected to this relationship.

The court is further of the opinion that the tort claims which the Does seek to pursue in the Tribal Court, being based on Townsend's alleged molestation of John Doe during his tenure at the store, arise directly from this consensual relationship so that the requirement of a sufficient nexus between the consensual relationship and exertion of tribal authority is satisfied. *See Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 656, 121 S.Ct. 1825, 149 L.Ed.2d 889 (2001) ("*Montana's* consensual relationship exception requires that the tax or regulation imposed by the Indian tribe have a nexus to the consensual relationship itself").

Notwithstanding this, Dolgen, citing *Plains Commerce Bank*, 554 U.S. 316, 128 S.Ct. 2709, submits that the consensual relationship exception does not support

---

1. Dolgen argues that Townsend had no authority to agree to such participation on behalf of the company, and that Dolgen itself did not enter into any such agreement. Defendants contend that Townsend had apparent authority on behalf of Dolgen in this regard, and that in any event, Dolgen ratified this decision. They note, in particular, that evidence shows that other Dolgen supervisors in the Dollar General store were aware of and participated on Dolgen's behalf in supervising other tribal youth who were assigned to the store under the Tribal Youth Opportunity Program. The Tribe made a colorable showing that Townsend at least had apparent authority in this regard.

tribal jurisdiction since the nonmember conduct at issue does not implicate tribal governance or internal relations. In *Plains Commerce Bank*, the plaintiff, a non-Indian bank, sold land it owned in fee simple on a tribal reservation to non-Indians. An Indian couple who had been leasing the land with an option to purchase, sued the bank in tribal court, contending the Bank discriminated against them by selling the land to nonmembers of the Tribe on terms more favorable than the Bank offered to sell it to them. *Id.* at 321, 128 S.Ct. 2709. After the couple prevailed on their claims in tribal court, the Bank filed suit in district court challenging tribal jurisdiction over the claims. The district court and Eighth Circuit found that tribal jurisdiction was proper under Montana's "consensual relationship" exception, holding that the Tribe had authority to regulate the business conduct of persons voluntarily dealing with tribal members, including a nonmember's sale of fee land. *Id.* at 322–23, 128 S.Ct. 2709. The Supreme Court reversed. The Court characterized the plaintiffs' discrimination claim as challenging "a non-Indian's sale of non-Indian fee land," which it held was beyond the authority of the tribal courts to adjudicate, stating:

> *Montana* does not permit Indian tribes to regulate the sale of non-Indian fee land. *Montana* and its progeny permit tribal regulation of nonmember *conduct* inside the reservation that implicates the tribe's sovereign interests. *Montana* expressly limits its first exception to the "activities of nonmembers," 450 U.S., at 565, 101 S.Ct. 1245, allowing these to be regulated to the extent necessary "to protect tribal self-government [and] to control internal relations," *id.*, at 564, 101 S.Ct. 1245.

*Id.* at 332, 128 S.Ct. 2709. The Court reasoned that because the subject claim did not involve nonmember *conduct* on fee land but rather involved the *sale* of non-Indian fee land, there was no tribal jurisdiction. *Id.*, 128 S.Ct. 2709. In distinguishing between "sale of the land and conduct on it," the Court referenced

> the limited nature of tribal sovereignty and the liberty interests of nonmembers. By virtue of their incorporation into the United States, the tribe's sovereign interests are now confined to managing tribal land, *see Worcester* [*v. State of Ga.*], 6 Pet. [515], at 561, 8 L.Ed. 483 [ (1832) ] (persons are allowed to enter Indian land only "with the assent of the [tribal members] themselves"), "protect[ing] tribal self-government," and "control[ling] internal relations," *see Montana*, 450 U.S., at 564, 101 S.Ct. 1245. The logic of *Montana* is that certain activities on non-Indian fee land (say, a business enterprise employing tribal members) or certain uses (say, commercial development) may intrude on the internal relations of the tribe or threaten tribal self-rule. To the extent they do, such activities or land uses may be regulated. *See Hicks, supra,* [533 U.S. 353] at 361, 121 S.Ct. 2304[, 150 L.Ed.2d 398 (2001) ] ("Tribal assertion of regulatory authority over nonmembers must be connected to that right of the Indians to make their own laws and be governed by them"). Put another way, certain forms of nonmember behavior, even on non-Indian fee land, may sufficiently affect the tribe as to justify tribal oversight. While tribes generally have no interest in regulating the conduct of nonmembers, then, they may regulate nonmember behavior that implicates tribal governance and internal relations.

*Id.* at 334–335, 128 S.Ct. 2709. The Court observed that while regulation of fee land sales could not be justified by the tribe's interests in protecting internal relations and self-government,

> This is not to suggest that the sale of the land will have no impact on the tribe.

The *uses* to which the land is put may very well change from owner to owner, and those uses may well affect the tribe and its members. As our cases bear out, *see supra*, at 2721–2723, the tribe may quite legitimately seek to protect its members from noxious uses that threaten tribal welfare or security, or from nonmember conduct on the land that does the same. But the key point is that any threat to the tribe's sovereign interests flows from changed uses or nonmember activities, rather than from the mere fact of resale. The tribe is able fully to vindicate its sovereign interests in protecting its members and preserving tribal self-government by regulating nonmember activity on the land, within the limits set forth in our cases. The tribe has no independent interest in restraining alienation of the land itself, and thus, no authority to do so.

Not only is regulation of fee land sale beyond the tribe's sovereign powers, it runs the risk of subjecting nonmembers to tribal regulatory authority without commensurate consent. Tribal sovereignty, it should be remembered, is "a sovereignty outside the basic structure of the Constitution." *United States v. Lara*, 541 U.S. 193, 212, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004) (KENNEDY, J., concurring in judgment). The Bill of Rights does not apply to Indian tribes.

*See Talton v. Mayes*, 163 U.S. 376, 382–385, 16 S.Ct. 986, 41 L.Ed. 196 (1896). Indian courts "differ from traditional American courts in a number of significant respects." *Hicks*, 533 U.S., at 383, 121 S.Ct. 2304 (SOUTER, J., concurring). And nonmembers have no part in tribal government—they have no say in the laws and regulations that govern tribal territory. Consequently, those laws and regulations may be fairly imposed on nonmembers only if the nonmember has consented, either expressly or by his actions. Even then, the regulation must stem from the tribe's inherent sovereign authority to set conditions on entry, preserve tribal self-government, or control internal relations. *See Montana*, 450 U.S., at 564, 101 S.Ct. 1245.

*Id.* at 336–337, 128 S.Ct. 2709.

The parties disagree as to the meaning and import of *Plains Commerce Bank* with respect to the first *Montana* exception. Plaintiffs submit that under the Court's interpretation of the exception in *Plains Commerce Bank*, no longer will every consensual relationship between a nonmember and a tribal member occurring on the reservation be sufficient to establish tribal jurisdiction over claims with a nexus to that relationship; rather, only those consensual relationships that are evaluated and determined to have an impact on tribal self governance or internal relations will trigger tribal jurisdiction.[2] Plaintiffs con-

---

**2.** As defendants note, several commentators have interpreted *Plains Commerce Bank* as likely narrowing the scope of the consensual relationship exception. *See, e.g.,* Paul A. Banker and Christopher Grgurich, *The Plains Commerce Bank Decision And Its Further Narrowing Of The Montana Exceptions As Applied To Tribal Court Jurisdiction Over Non–Member Defendants,* 36 WM. MITCHELL L. REV. 565, 586–589 (2009–2010) ("The opinion appears to narrow the Montana exceptions by interpreting them with language that tends toward a more limited reading of the text of the exceptions."); Lisa M. Slepnikoff, *More Questions Than Answers: Plains Commerce Bank v. Long Family Land And Cattle Company, Inc. And The U.S. Supreme Court's Failure To Define The Extent Of Tribal Civil Authority Over Nonmembers On Non–Indian Land,* 54 S.D. L.Rev. 460 (2009) ("The Court's questionable interpretation of *Montana v. United States* may remove from tribal jurisdiction case which, under a traditional interpretation of Montana, would have been within a tribe's authority to adjudicate.").

tend that since the consensual relationship here involved does not implicate tribal self governance or internal relations, then the exception does not apply and there can be no basis for tribal jurisdiction.

Defendants, on the other hand, maintain that nothing in *Plains Commerce Bank* altered the basic *Montana* framework and that to establish applicability of the consensual relationship exception, no showing is required to be made beyond the existence of the consensual relationship which supports a finding of consent to tribal jurisdiction, and the nexus between the consensual relationship and exertion of tribal authority. According to defendants, it is implicit in *Montana* and its progeny that the right of Indian tribes to self governance includes the right to adjudicate civil disputes arising from voluntary consensual relationships between tribes and their members and nonmembers. That is, disputes arising from member-nonmember or tribe-nonmember consensual relationships are deemed as a matter of law to impact tribal rights of self-government sufficient to permit the exercise of tribal court jurisdiction to adjudicate such disputes. The key point underlying this *Montana* exception is that it is a core attribute of tribal sovereignty and critical to the survival of tribal governments and to tribal self-government that tribes retain authority to adjudicate civil disputes arising from voluntary consensual relationships between tribes and tribal members and nonmembers on their reservations (and especially so where the challenged conduct occurs on trust lands). The exception, they submit, does not ask whether depriving a particular tribal court of jurisdiction to adjudicate a particular dispute arising from a particular consensual relationship would interfere with the tribe's right of self government, but whether depriving a tribe's courts of such jurisdiction in general to resolve such disputes would undermine that tribe's right of self government.

■ In the court's opinion, defendants have the better of this argument. *Montana* identified nonmembers' consensual relationships with tribes and their members, which involve conduct on the reservation (and particularly on Indian trust land), as a circumstance that warrants tribal civil jurisdiction over matters arising from those relationships.[3] *Montana* reflects a legal presumption that it would materially undermine tribal rights of self-government

---

**3.** Notably, although a number of post-*Plains Commerce Bank* cases have considered the consensual relationship exception, none has identified the additional showing advocated by plaintiffs as a prerequisite to its application. *See Water Wheel Camp Recreational Area, Inc. v. LaRance,* 642 F.3d 802, 817 (9th Cir.2011) (finding tribe had authority under first exception to regulate nonmembers' activities on reservation based on long-term business lease with tribe for use of prime tribal riverfront property; fact that business venture itself constituted a significant economic interest for the tribe supported jurisdiction under second exception as well); *Crowe & Dunlevy, P.C. v. Stidham,* 640 F.3d 1140, 1151 (10th Cir.2011) (post-*Plains Commerce Bank* case holding that "consensual relationship" may establish tribal court jurisdiction under *Montana* "if there is a sufficient 'nexus' between

that relationship and the attendant 'exertion of tribal authority' "); *Attorney's Process and Investigation Servs., Inc. v. Sac & Fox Tribe of Mississippi in Iowa,* 609 F.3d 927, 941 (8th Cir.2010) (with respect to consensual relationship exception, identifying "operative question for jurisdictional purposes [as] whether the conversion claim has a sufficient nexus to the consensual relationship between" nonmember and tribe); *Philip Morris USA, Inc. v. King Mountain Tobacco Co., Inc.,* 569 F.3d 932, 941–942 (9th Cir.2009) (stating that "mere fact that a nonmember has some consensual commercial contacts with a tribe does not mean that the tribe has jurisdiction over all suits involving that nonmember, or even over all such suits that arise within the reservation; the suit must also arise out of those consensual contacts").

to deprive tribal courts of jurisdiction in general as an exercise of tribal sovereignty to adjudicate such claims. In this case, a consensual relationship exists; and the claims at issue arise from that relationship. Accordingly, the court concludes that the Tribe has sufficiently demonstrated applicability of the first *Montana* exception and thus the existence of tribal jurisdiction.[4]

Therefore, it is ordered that Dolgen's motion for summary judgment is denied, and defendants' motions for summary judgment are granted.

---

4. Dolgen has made a number of arguments relating to causation, liability and damages which the court views as bearing on the merits, not jurisdiction.