JAMES E. GRAVES, JR., Circuit Judge:
The court previously issued its opinion in this case on October 3, 2013. Dolgencorp, Inc. v. Miss. Band of Choctaw Indians, 732 F.3d 409 (5th Cir.2013). We hereby withdraw the previous opinion and substitute the following.
Dolgencorp, Inc. and Dollar General Corp. (collectively “Dolgencorp”) brought an action in the district court seeking to enjoin John Doe, a member of the Mississippi Band of Choctaw Indians, and other defendants (collectively “the tribal defendants”) from adjudicating tort claims against Dolgencorp in the Choctaw tribal court. The district court denied Dolgen-corp’s motion for summary judgment and granted summary judgment in favor of the tribal defendants, concluding that the tribal court may properly exercise jurisdiction over Doe’s claims. Because we agree that Dolgencorp’s consensual relationship with Doe gives rise to tribal court jurisdiction over Doe’s claims under Montana v. United States, 450 U.S. 544, 564-66, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), we AFFIRM the district court’s judgment.
BACKGROUND
Dolgencorp operates a Dollar General store on the Choctaw reservation in Mississippi. The store sits on land held by the United States in trust for the Mississippi Band of Choctaw Indians, and operates pursuant to a lease agreement with the tribe and a business license issued by the tribe. At all relevant times, Dale Townsend was the store’s manager. The tribe operates a job training program known as the Youth Opportunity Program (“YOP”), which attempts to place young tribe members in short-term, unpaid positions with local businesses for educational purposes. In the spring of 2003, Townsend, in his capacity as manager of the store, agreed to participate in the YOP. Pursuant to this program, John Doe, a thirteen-year-old tribe member, was assigned to the Dollar General store. Doe alleges that Townsend sexually molested him while he was working at the Dollar General store.
In January 2005, Doe sued Dolgencorp and Townsend in tribal court. Doe alleges that Dolgencorp is vicariously liable for Townsend’s actions, and that Dolgencorp negligently hired, trained, or supervised Townsend. Doe further alleges that the assault has caused him severe mental trauma, and seeks “actual and punitive damages in a sum not less than 2.5 million dollars.”
Dolgencorp and Townsend filed motions in the tribal court seeking to dismiss Doe’s claims based on lack of subject-matter jurisdiction. The tribal court denied both motions. Both parties petitioned the Choctaw Supreme Court for interlocutory review of the lower court’s order denying the motions to dismiss. Under an analysis based on Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), the Choctaw Supreme Court held that subject-matter jurisdiction existed as to both Dolgencorp and Townsend and therefore dismissed the appeal, remanding the case to the lower court.
On March 10, 2008, Dolgencorp and Townsend filed an action in the U.S. District Court for the Southern District of *170 Mississippi against the tribal defendants. Dolgencorp and Townsend allege that the tribal court lacks jurisdiction over them in the suit filed by Doe and seek to enjoin the prosecution of Doe’s suit in tribal court. Dolgencorp and Townsend each filed a subsequent motion for a temporary restraining order and a preliminary injunction.
The district granted Townsend’s motion but denied Dolgencorp’s motion. The district court reasoned that “[i]f John Doe performed services for Dolgen that had value to Dolgen such that Dolgen enjoyed a commercial benefit from its agreement to allow his placement in its store, then it would be reasonable to conclude that there existed the kind of consensual relationship required by Montana’s first exception.”[1] Dolgen Corp., Inc. v. Mississippi Band of Choctaw Indians, No. 4:08CV22, 2008 WL 5381906, at *5 (S.D.Miss. Dec. 19, 2008). The district court found no evidence as to “whether Dolgen’s participation was essentially gratuitous or whether it received a commercial benefit from the arrangement.” Id. at *6. Accordingly, the district court held that Dolgencorp had not carried its burden of establishing likely success on the merits (Le. showing that the first Montana exception does not apply). Id. The district court also rejected Dolgencorp’s argument that Doe’s lawsuit has no nexus to the alleged consensual relationship between Dolgencorp and the tribe regarding the YOP. Id. However, the district court held that because Townsend personally had not entered into any consensual relationship with either the tribe or Doe, the tribal court had no jurisdiction over him. Id. at *7.
Dolgencorp and the tribal defendants subsequently filed cross motions for summary judgment. In its order granting the tribal defendants’ motion and denying Dol-gencorp’s motion, the district court explained:
It now appears undisputed that Dale Townsend, purportedly on behalf of Dol-gen, agreed with the Tribe to participate in the Tribal Youth Opportunity Program, and that based on such agreement, John Doe was placed in the Dollar General store under Townsend’s direct supervision. Doe did not thereby become an employee of Dolgen, but he functioned as an unpaid intern or apprentice, receiving job training from Dolgen and in turn providing] free labor to Dolgen for the period of his assignment. In the court’s opinion, as a consequence of this arrangement, Dol-gen implicitly consented to the jurisdiction of the Tribe with respect to matters connected to this relationship.
Dolgencorp Inc. v. Mississippi Band of Choctaw Indians, 846 F.Supp.2d 646, 650 (S.D.Miss.2011) (footnote omitted). The district court further held that Doe’s tort claims, “being based on Townsend’s alleged molestation of John Doe during his tenure at the store, arise directly from this consensual relationship so that the requirement of a sufficient nexus between the consensual relationship and exertion of tribal authority is satisfied.” Id.
The district court also rejected Dolgen-corp’s argument, based on Plains Commerce Bank v. Long Family Land and Cattle Co., Inc., 554 U.S. 316, 128 S.Ct. 2709, 171 L.Ed.2d 457 (2008), that “the consensual relationship exception does not *171 support tribal jurisdiction since the nonmember conduct at issue does not implicate tribal governance or internal relations.” Dolgencorp, 846 F.Supp.2d at 650-51. The district court explained:
The parties disagree as to the meaning and import of Plains Commerce Bank with respect to the first Montana exception. Plaintiffs submit that under the Court’s interpretation of the exception in Plains Commerce Bank, no longer will every consensual relationship between a nonmember and a tribal member occurring on the reservation be sufficient to establish tribal jurisdiction over claims with a nexus to that relationship; rather, only those consensual relationships that are evaluated and determined to have an impact on tribal self governance or internal relations will trigger tribal jurisdiction. Plaintiffs contend that since the consensual relationship here involved does not implicate tribal self-governance or internal relations, then the exception does not apply and there can be no basis for tribal jurisdiction.
Defendants, on the other hand, maintain that nothing in Plains Commerce Bank altered the basic Montana framework and that to establish applicability of the consensual relationship exception, no showing is required to be made beyond the existence of the consensual relationship which supports a finding of consent to tribal jurisdiction, and the nexus between the consensual relationship and exertion of tribal authority. According to defendants, it is implicit in Montana and its progeny that the right of Indian tribes to self governance includes the right to adjudicate civil disputes arising from voluntary consensual relationships between tribes and their members and nonmembers. That is, disputes arising from member-nonmember or tribe-nonmember consensual relationships are deemed as a matter of law to impact tribal rights of self-government sufficient to permit the exercise of tribal court jurisdiction to adjudicate such disputes.
Id. at 652-53 (footnote omitted). The district court agreed with the tribal defendants’ position, stating that “although a number of post-Plains Commerce Bank cases have considered the consensual relationship exception, none has identified the additional showing advocated by plaintiffs as a prerequisite to its application.” Id. at 653-54 & n. 3. Accordingly, the district court concluded that tribal court jurisdiction was permitted under the first Montana exception. Id. at 654.
Dolgencorp appealed. Dolgencorp does not contend that there are disputed questions of material fact; instead, it argues that the district court erred in its legal determination that the Montana consensual relationship exception was satisfied.
DISCUSSION
This case deals with the inherent sovereign authority of Indian tribes. Indian tribes can be viewed as independent sovereign communities that have lost some aspects of sovereignty. See, e.g., United States v. Wheeler, 435 U.S. 313, 322-23, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978).
The sovereignty that the Indian tribes retain is of a unique and limited character. It exists only at the sufferance of Congress and is subject to complete de-feasance. But until Congress acts, the tribes retain their existing sovereign powers. In sum, Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status.
Id. at 323, 98 S.Ct. 1079. The Supreme Court has recognized that “both the tribes *172 and the Federal Government are firmly committed to the goal of promoting tribal self-government, a goal embodied in numerous federal statutes.” New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 334-35, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983). Moreover, “[t]ribal courts play a vital role in tribal self-government, ... and the Federal Government has consistently encouraged their development.” Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 14-15, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987).
Generally, Indian tribes retain the power to govern themselves and to control relations between members of the tribe. See Wheeler, 435 U.S. at 326, 98 S.Ct. 1079. On the other hand, “by virtue of their dependent status,” Indian tribes have been largely divested of control over external relations; ie. “relations between an Indian tribe and nonmembers of the tribe.” See id. In other words, “exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation.” Montana, 450 U.S. at 564, 101 S.Ct. 1245.
In Montana, the Supreme Court recognized that generally, “the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe.” 450 U.S. at 565, 101 S.Ct. 1245. However, the Court explained:
To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.[2]
Id. The Court later held that “Montana’s consensual relationship exception requires that the tax or regulation imposed by the Indian tribe have a nexus to the consensual relationship itself.” Atkinson Trading Co., Inc. v. Shirley, 532 U.S. 645, 656, 121 S.Ct. 1825, 149 L.Ed.2d 889 (2001). Despite the limitations recognized in Montana and subsequent cases, the Court has consistently acknowledged that *‘[t]ribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty.” Iowa Mut., 480 U.S. at 18, 107 S.Ct. 971.
“[WJhere tribes possess authority to regulate the activities of nonmembers, civil jurisdiction over disputes arising out of such activities presumptively lies in the tribal courts.” Strate v. A-1 Contractors, 520 U.S. 438, 453, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) (quotation and brackets omitted). A tribe’s regulation of nonmember conduct through tort law is analyzed under the Montana framework. See, e.g., Attorney’s Process & Investigation Services, Inc. v. Sac & Fox Tribe, 609 F.3d 927, 938 (8th Cir.2010) (“If the Tribe retains the power under Montana to regulate ... conduct, we fail to see how it makes any difference whether it does so through precisely tailored regulations or through tort claims-”); Philip Morris USA, Inc. v. King Mountain Tobacco Co., Inc., 569 F.3d 932, 939 (9th Cir.2009) (“The *173 Montana framework is applicable to tribal adjudicative jurisdiction, which extends no further than the Montana exceptions.”).[3] In considering regulation through tort law, “courts applying Montana should not simply consider the abstract elements of the tribal claim at issue, but must focus on the specific nonmember conduct alleged, taking a functional view of the regulatory effect of the claim on the nonmember.” Attorney’s Process, 609 F.3d at 938.
Dolgeneorp presents several arguments as to why tribal court jurisdiction over Doe’s tort claims is not justified under the Montana consensual relationship exception.
I. Commercial relationship
Under Montana, a tribe may regulate “the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.” 450 U.S. at 565, 101 S.Ct. 1245 (emphasis added). Relying on a single repudiated appellate opinion, Dolgen-eorp argues that “‘other arrangements’ ... also must be of a commercial nature.” Boxx v. Long Warrior, 265 F.3d 771, 776 (9th Cir.2001); see Smith v. Salish Kootenai College, 434 F.3d 1127, 1137 n. 4 (9th Cir.2006) (en banc) (disapproving of this language in Boxx). In other words, Dol-gencorp argues that noncommercial relationships do not give rise to tribal jurisdiction under the first Montana exception. We decline to impose such a restriction, which does not appear to be supported by any compelling rationale. Moreover, such a requirement would be easily satisfied in this case. Although Doe worked for only a brief time at the Dollar General store and was not paid, he was essentially an unpaid intern, performing limited work in exchange for job training and experience. This is unquestionably a relationship “of a commercial nature.”
II. Nexus
Dolgeneorp argues that there is no nexus between its participation in the YOP and Doe’s tort claims. We disagree. The conduct for which Doe seeks to hold Dol-gencorp liable is its alleged placement, in its Dollar General store located on tribal lands, of a manager who sexually assaulted Doe while he was working there. This conduct has an obvious nexus to Dolgen-corp’s participation in the YOP. In essence, a tribe that has agreed to place a minor tribe member as an unpaid intern in a business located on tribal land on a reservation is attempting to regulate the safety of the child’s workplace. Simply put, the tribe is protecting its own children on its own land. It is surely within the tribe’s regulatory authority to insist that a child working for a local business not be *174 sexually assaulted by the employees of the business. The fact that the regulation takes the form of a tort duty that may be vindicated by individual tribe members in tribal court makes no difference. See, e.g., Attorney’s Process, 609 F.3d at 938. To the extent that foreseeability is relevant to the nexus issue, as Dolgencorp suggests, it is present here. Having agreed to place a minor tribe member in a position of quasi-employment on Indian land in a reservation, it would hardly be surprising for Dol-gencorp to have to answer in tribal court for harm caused to the child in the course of his employment.[4]*'
Dolgencorp confuses the merits of Doe’s case with the question of tribal jurisdiction. It may very well be that Dolgencorp did not do, or fail to do, anything that would cause it to be held liable to Doe. The nexus component of the tribal jurisdiction question, however, centers on the nexus between the alleged misconduct and the consensual action of Dolgencorp in participating in the YOP.
III. The effect of Plains Commerce
Dolgencorp argues that Plains Commerce narrowed the Montana consensual relationship exception, allowing tribes to regulate consensual relationships with nonmembers only upon a showing that the specific relationships “implicate tribal governance and internal relations.” In Plains Commerce, 554 U.S. at 334-35, 128 S.Ct. 2709, the Supreme Court described the Montana consensual relationship exception as follows:
The logic of Montana is that certain activities on non-Indian fee land (say, a business enterprise employing tribal members) or certain uses (say, commercial development) may intrude on the internal relations of the tribe or threaten self-rule. To the extent they do, such activities or land uses may be regulated. Put another way, certain forms of nonmember behavior, even on non-Indian fee land, may sufficiently affect the tribe as to justify tribal oversight. While tribes generally have no interest in regulating the conduct of nonmembers, then, they may regulate nonmember behavior that implicates tribal governance and internal relations.
(citation and parenthetical omitted). The Court further stated:
[Indian] laws and regulations may be fairly imposed on nonmembers only if the nonmember has consented, either *175 expressly or by his actions. Even then, the regulation must stem from the tribe’s inherent sovereign authority to set conditions on entry, preserve tribal self-government, or control internal relations. See Montana, 450 U.S., at 564, 101 S.Ct. 1245.
Id. at 337,128 S.Ct. 2709.
We do not interpret Plains Commerce to require an additional showing that one specific relationship, in itself, “intrude! s] on the internal relations of the tribe or threaten[s] self-rule.” It is hard to imagine how a single employment relationship between a tribe member and a business could ever have such an impact. On the other hand, at a higher level of generality, the ability to regulate the working conditions (particularly as pertains to health and safety) of tribe members employed on reservation land is plainly central to the tribe’s power of self-government. Nothing in Plains Commerce requires a focus on the highly specific rather than the general.
Dolgencorp notes the statement in Plains Commerce that “a business enterprise employing tribal members ... may intrude on the internal relations of the tribe or threaten self-rule,” and that “[t]o the extent [it does], [its] activities ... may be regulated.” 554 U.S. at 334-35, 128 S.Ct. 2709 (emphasis added). This statement expresses nothing more than the uncontroversial proposition that a tribe cannot impose any conceivable regulation on a business simply because it is operating on a reservation and employing tribe members. However, such a limitation is already built into the first Montana exception. Under that exception, the tribe may only regulate activity having a logical nexus to some consensual relationship between a business and the tribe or its members. See, e.g., Philip Morris, 569 F.3d at 941 (“The mere fact that a nonmember has some consensual commercial contacts with a tribe does not mean that the tribe has jurisdiction over all suits involving that nonmember, or even over all such suits that arise within the reservation; the suit must also arise out of those consensual contacts.”).
Our conclusion is strengthened by the fact that since Plains Commerce was decided, no court has, despite finding a consensual relationship with a nexus to a tribal regulation, rejected tribal jurisdiction because the relationship did not “implicate tribal governance and internal relations.”[5] We also note that any discussion in Plains Commerce of tribal authority to regulate nonmember conduct under Montana is dicta; its result is based on a holding that Montana does not allow a tribe to regulate the sale of land owned by a non-member. See, e.g., Plains Commerce, 554 U.S. at 340, 128 S.Ct. 2709 (“Montana provides that, in certain circumstances, tribes may exercise authority over the conduct of nonmembers, even if that conduct takes place on non-Indian fee land. But conduct taking place on the land and the sale of the land are two very different things.”).[6]
IV. Off-reservation conduct
Dolgencorp argues that Doe failed to adequately allege and prove that Dol- *176 gencorp’s negligent hiring, training, or supervision of Townsend occurred on the reservation.[7] However, Dolgencorp failed to present this argument either to the district court or to the tribal courts. “Under this Circuit’s general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate ‘extraordinary circumstances.’ ” AG Acceptance Corp. v. Veigel, 564 F.3d 695, 700 (5th Cir.2009). Because Dolgencorp has not demonstrated extraordinary circumstances, we decline to consider this argument for the first time on appeal.
Dolgencorp notes that a tribal court’s jurisdiction over a nonmember is an issue of subject-matter jurisdiction. See Nevada v. Hicks, 533 U.S. at 364, 367 n. 8, 121 S.Ct. 2304. Dolgencorp further notes that because the “concept of subject-matter jurisdiction ... can never be forfeited or waived ... [,] defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court.” United States v. Cotton, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). Dolgencorp therefore contends that arguments pertaining to the tribal court’s lack of jurisdiction can never be waived.
Although it is true that defects in federal subject-matter jurisdiction cannot *177 be waived in a federal case, a federal court has no independent obligation to “correct” a tribal court’s lack of subject-matter jurisdiction over another case. Dolgencorp, as a plaintiff, must set forth a meritorious case to enjoin the tribal court proceedings based on lack of subject-matter jurisdiction. If it fails to present its arguments at the appropriate time, they are generally waived.
V. Punitive damages
Dolgencorp argues that the tribal court lacks jurisdiction over Doe’s claims because Doe seeks punitive damages. Because the inherent sovereign authority of Indian tribes does not include criminal jurisdiction over non-Indians, Indian tribes “do not have inherent jurisdiction to try and to punish non-Indians.” Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 195, 212, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978). Dolgencorp argues, based on Oli-phant, that Indian tribes likewise have no jurisdiction to impose civil punitive damages on a nonmember. Dolgencorp notes that “the Bill of Rights and the Fourteenth Amendment do not of their own force apply to Indian tribes.” Hicks, 533 U.S. at 383, 121 S.Ct. 2304 (Souter, J., concurring). Dolgencorp also notes that an award of punitive damages may implicate constitutional protections against excessive punishment, in that “grossly excessive” punitive damages awards violate the Due Process Clause of the Fourteenth Amendment. BMW of North America v. Gore, 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Dolgencorp therefore argues: “Because these protections are not present in tribal court, federal recognition of tribal jurisdiction over non-Indians in claims for punitive damages would in and of itself violate the Due Process clause. The federal government simply cannot waive a citizen’s constitutional right by making them subject to the jurisdiction of a court where constitutional rights do not apply.”
Dolgencorp identifies no authority applying Oliphant in the context of civil punitive damages or otherwise holding that Indian tribes are categorically prohibited from imposing punitive damages on nonmembers. Although punitive damages share many characteristics of criminal punishment, they are distinct; for example, punitive damages in civil cases do not invoke double jeopardy concerns. See, e.g., Hudson v. United States, 522 U.S. 93, 103, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (a penalty that is “civil in nature” does not implicate double jeopardy). Furthermore, Dolgencorp’s broader argument simply proves too much. If the federal government could never “waive a citizen’s constitutional right” by subjecting him to the jurisdiction of a court lacking full constitutional protections, a non-Indian could never be subjected to tribal court jurisdiction. Yet the Supreme Court has acknowledged that by entering certain consensual relationships with Indian tribes, a nonmember may implicitly consent to jurisdiction in a tribal court that operates differently from federal and state courts. Accordingly, we conclude that the availability of punitive damages has no effect on the tribal court’s jurisdiction over Doe’s claims against Dol-gencorp.
AFFIRMED.

. As explained more fully below, Montana and its progeny provide two exceptions to the general rule that Indian tribes cannot exercise civil jurisdiction over non-members. The first Montana exception, also known as the consensual relationship exception, provides that a tribe may regulate conduct that has a nexus to some consensual relationship between the non-member and the tribe or its members.

. The Court further held that "[a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.” Montana, 450 U.S. at 566, 101 S.Ct. 1245. Because the tribal defendants do not argue that this second exception is applicable here, we do not consider it further.

. The dissenting opinion suggests that "[b]e-fore today, no circuit court has upheld Indian-court jurisdiction, under Montana’s first exception, over a tort claim against a nonmember defendant.” However, every circuit court to consider the question—including the Fifth Circuit—has either held or assumed that tribal courts may exercise jurisdiction over tort claims against non-members under the first Montana exception. See, e.g., Bank One, N.A. v. Shumake, 281 F.3d 507, 509-12 & n. 13 (5th Cir.2002) (finding colorable tribal court jurisdiction over fraud claims by Choctaw tribe members against a non-member bank based on the first Montana exception, such that tribal exhaustion was required). No circuit court has held that such tort claims are not allowed or suggested that they should be treated differently from other types of regulation of non-member conduct. Furthermore, no circuit court has held that tribal court tort jurisdiction over a non-member is allowed under the first Montana exception only where such jurisdiction is shown in that specific case to be necessary to protect tribal self-government or to control internal relations.

. The dissenting opinion suggests that the nexus is insufficient here because ‘‘Dolgen-corp could not have anticipated that its consensual relationship with Doe would subject it to any and all tort claims actionable under tribal law.” We are not concerned here with "any and all tort claims actionable under tribal law.” Doe has brought two specific claims, both of which are based on the alleged sexual molestation of a child by a store manager. We suspect that Dolgencorp could have easily anticipated that such a thing would be actionable under Choctaw law. Accordingly, under the facts of this case, we need not reach the hypothetical factual scenarios posited by the dissenting opinion.
Furthermore, we do not agree that tribal law and tribal court are entirely unfamiliar to Dolgencorp. For example, in its commercial lease agreement, Dolgencorp agrees to "comply with all codes and requirements of all tribal and federal laws and regulations” pertaining to the leased premises. The agreement also provides that it "shall be construed according to the laws of the Mississippi Band of Choctaw Indians and the state of Mississippi” and that it "is subject to the Choctaw Tribal Tort Claims Act.” Finally, the agreement provides that "[e]xclusive venue and jurisdiction shall be in the Tribal Court of the Mississippi Band of Choctaw Indians.” Although we do not consider whether the lease agreement in itself would have a sufficient nexus to support tribal court jurisdiction over Doe’s tort claims, we highlight this agreement to show that a business operating on Indian land in a reservation is unlikely to be surprised by the possibility of being subjected to tribal law in tribal court.

. Two district court opinions have suggested that such an additional showing is necessary but have not relied on its absence to reject tribal jurisdiction. Salt River Project Agricultural Improvement and Power District v. Lee. No. 08-CV-8028, 2013 WL 321884 at *13-15 (D.Ariz. Jan. 28, 2013) (finding the first Montana exception applicable and stating that “regulating employment implicates the tribe's sovereign authority to control internal relations”); Rolling Frito-Lay Sales LP v. Stover, No. 11-CV-1361, 2012 WL 252938 at *4 (D.Ariz. Jan. 26, 2012) (rejecting tribal court jurisdiction based on a lacking nexus between the consensual relationship and the tort claim).

. The dissenting opinion, relying on law review articles and dicta from Plains Commerce, *176 would adopt a "profoundly narrow” interpretation of the Montana consensual relationship exception. As the dissent all but admits, this would read the first Montana exception out of existence. If regulation of some consensual relationship is necessary to protect tribal self-government or to control internal relations, it would seem to fall necessarily within the second Montana exception, which allows tribes to regulate non-member conduct that "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.” Montana, 450 U.S. at 566, 101 S.Ct. 1245.
This highly restrictive interpretation appears to be largely driven by the concern that subjecting non-members to the jurisdiction of tribal courts will violate their due process rights, a concern we find to be exaggerated. It is true that “the Bill of Rights and the Fourteenth Amendment do not of their own force apply to Indian tribes.” Nevada v. Hicks, 533 U.S. 353, 383, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) (Souter, J., concurring). However, the Indian Civil Rights Act of 1968 imposes numerous constraints on Indian tribes, including a provision that no tribe may “deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law.” 25 U.S.C. § 1302(a)(8). Although the interpretation of this statute may not precisely track the Supreme Court's interpretation of the analogous constitutional language, see id. at 384, 121 S.Ct. 2304, we have no reason to believe that this results in injustice to litigants. While hypothesizing about potential unfairness in a tribal court, neither Dolgencorp nor the dissenting opinion points to any actual unfairness in the procedures of this particular tribal court.

. Although the Supreme Court has never explicitly held that Indian tribes lack inherent authority to regulate nonmember conduct that takes place outside their reservations, this is at least strongly implied. For example, Plains Commerce states that "Montana and its progeny permit tribal regulation of nonmember conduct inside the reservation that implicates the tribe’s sovereign interests." 554 U.S. at 332, 128 S.Ct. 2709 (emphasis added and removed); see also Philip Morris, 569 F.3d at 938 (“The jurisdiction of tribal courts does not extend beyond tribal boundaries.”); Hornell Brewing Co. v. Rosebud Sioux Tribal Court, 133 F.3d 1087, 1091-92 (8th Cir.1998) ("Neither Montana nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring outside their reservations."); but see DISH Network Service L.L.C. v. Laducer, 725 F.3d 877, 884 (8th Cir.2013) (“Even if the alleged abuse of process tort occurred off tribal lands, jurisdiction would not clearly be lacking in the tribal court because the tort claim arises out of and is intimately related to DISH’s contract with Brian and that contract relates to activities on tribal land.”).