# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3487

_____

Kristin Ann Tix, now known as Kristin Ann McGowan

*Plaintiff - Appellant*

v.

Robert William Tix

*Defendant - Appellee*

------------------------------

Prairie Island Indian Community, in the State of Minnesota; Leech Lake Band of
Ojibwe; Shakopee Mdewakanton Sioux Community; Mille Lacs Band of Ojibwe;
White Earth Band of Ojibwe; Fond Du Lac Band of Lake Superior Chippewa;
Lower Sioux Indian Community, in the State of Minnesota; The Upper Sioux
Community; Bois Forte Band of Chippewa; Tribes and Tribal Organizations
Concerned with Maintaining Non-territorial Jurisdiction; Coalition of Large
Tribes; Maggie Blackhawk; Alexandra Fay; Daniel David Lewerenz; Jean M.
O'Brien; Grand Portage Band of Chippewa; Red Lake Band of Chippewa Indians

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 21, 2025
Filed: December 12, 2025
_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.

_____

GRUENDER, Circuit Judge.

In September 2008, Robert William Tix, a member of the Prairie Island Mdewakanton Dakota Indian Community (the "Community"), married Kristin Ann McGowan[1], a non-Indian, in Minneapolis, Minnesota. Over thirteen years later, on February 9, 2022, Tix and McGowan each filed for divorce in separate forums. Tix filed his petition for divorce in the Community Court (the "Tribal Court") while McGowan filed her petition in Minnesota state court. Over McGowan's objections, the divorce proceeded in the Tribal Court. After a four-day trial, the Tribal Court issued a divorce order that, in relevant part, dissolved the marriage, distributed the marital assets, and awarded joint custody over the parties' three minor children, each of whom is an enrolled member of the Community.

After the Community's Court of Appeals affirmed the Tribal Court's divorce order, McGowan sued Tix in the United States District Court for the District of Minnesota, seeking a declaration that the Tribal Court lacked subject matter and personal jurisdiction as well as an injunction preventing Tix from enforcing the divorce order. The district court granted summary judgment to Tix and dismissed the action based, in part, on its determination that the Tribal Court retained subject matter jurisdiction over the parties' divorce under *Montana v. United States*, 450 U.S. 544 (1981). We reverse and remand for further proceedings.

_____

[1]Appellant Tix n/k/a McGowan maintains that both parties retain their married surname, "Tix," because the tribal court lacked jurisdiction over Tix's divorce petition. Though we conclude the tribal court lacked jurisdiction, we refer to appellant as "McGowan" to avoid confusion.

-2-

# I. **Background**

McGowan and Tix married on September 27, 2008 in Minneapolis, Minnesota. Throughout their marriage, they lived with their children in Edina, Minnesota, roughly fifty miles outside the western boundary of the Community's reservation, which sits on over 3,000 acres of land southeast of Minneapolis. Neither McGowan nor Tix held consistent employment during their marriage. To support themselves, they largely relied upon the Community's monthly disbursement of a share of its gaming revenues to Tix. The Community distributed these "per capita payments" to Tix as a right of his membership.[2] In 2021, Tix received roughly $120,000 in "per capita payments," and in 2022, he received a little more than $172,000. Notably, though Tix elected to use his income to support his family, McGowan did not acquire a legal interest in these "per capita payments," which are not marital property under Community law but are "the separate property of the person to whom they are issued." She did, however, obtain tribal health and dental insurance benefits because of her marriage. The Community also reimbursed the parties for their member-children's educational expenses. Outside of this significant financial assistance, McGowan's personal connection to the Community was limited to occasional visits to the reservation for Community events and medical care.

On February 9, 2022, McGowan and Tix each filed for divorce. McGowan filed her petition for divorce in the Hennepin County District Court while Tix filed in the Tribal Court.[3] In March 2022, McGowan moved to dismiss the Tribal Court proceedings for lack of subject matter and personal jurisdiction. The Tribal Court denied her motion. Subsequently, the Hennepin County District Court issued an order deferring jurisdiction to the Tribal Court and staying McGowan's petition for

---

[2]Each of the parties' children also receive "per capita payments" as a right of membership, which are held in trust by the Community.

[3]Tix does not dispute that the state court possessed subject matter jurisdiction over McGowan's divorce petition against him.

-3-

divorce until completion of the Tribal Court's proceedings. McGowan twice appealed that stay to the Minnesota Court of Appeals without success. In September 2022, McGowan voluntarily dismissed her petition for divorce in the state court. Over McGowan's objection, the Tribal Court held a four-day trial on Tix's divorce petition in May 2023 that included testimony from both parties as well as the children's *guardian ad litem*, family members, and several expert witnesses.

On July 21, 2023, the Tribal Court issued a divorce order that, *inter alia*, (1) dissolved the parties' marriage, (2) awarded joint custody over their children, (3) assigned each party's custodial parenting time, (4) divided and distributed the parties' marital assets and debts, (5) set a monthly child support obligation for Tix, (6) mandated each party "support the children's Native American/Dakota culture," and (7) prohibited either party from "making negative statements" or "disparaging statements" about each other or their "child[ren's] culture" in front of or around their children. The Tribal Court did not award McGowan any spousal maintenance, notwithstanding Tix's significant annual income, because "per capita payments" are not marital property under Community law and "may not [be] consider[ed] . . . when establishing or amend[ing] an order for [spousal] maintenance."[4]

McGowan appealed the Tribal Court's denial of her motion to dismiss and divorce order to the Community's Court of Appeals, which is the Community's court of last resort. The Court of Appeals affirmed the Tribal Court in all respects. In particular, the Court of Appeals held that the Tribal Court retained subject matter jurisdiction over Tix's divorce petition pursuant to *Montana v. United States*, 450 U.S. at 565-66, which recognized an exception to the general rule against tribal authority over nonmembers for "activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements" (the "consensual relationship exception"). *Id.*

---

[4]McGowan asserts a Minnesota court can consider Tix's income from "per capita payments" in calculating his spousal support obligation. Tix does not dispute this assertion.

In May 2024, McGowan sued Tix in the district court, seeking an order declaring the Tribal Court's divorce order "null and void" for lack of jurisdiction as well as an injunction preventing Tix from enforcing it in tribal or state courts. Tix moved to dismiss, in part, based on McGowan's failure to join the Community as a party to her action under Rule 19. *See* Fed. R. Civ. P. 12(b)(7). McGowan then moved for summary judgment on the jurisdictional issues.

The district court granted Tix summary judgment on McGowan's jurisdictional challenges. *See* Fed. R. Civ. P. 56(f). As relevant to this appeal, the district court agreed with Tix that the Tribal Court retained subject matter jurisdiction over the parties' divorce under the consensual relationship exception. It explained that the exception applied because McGowan's marriage to Tix was a "consensual relationship" via "contract" or "other arrangement" with a tribe member and she could "reasonably anticipate" tribal jurisdiction because of her "dealings" with Tix and the Community—namely, her reliance on the Community's "per capita payments" and insurance benefits as well as her visits to the Community's reservation with her children. Having resolved the jurisdictional issues in Tix's favor, the district court dismissed McGowan's complaint with prejudice and Tix's motion to dismiss as moot.

McGowan appeals, arguing the district court erred in concluding the Tribal Court had subject matter jurisdiction over her divorce under the consensual relationship exception. In response, Tix, with support from several amici, including the Community, defends the district court's holding and offers three alternative bases for the Tribal Court's subject matter jurisdiction that he did not present to the district court. Tix also asks us to affirm on the basis that McGowan's complaint is defective because it fails to include an indispensable party—the Community—as a defendant under Rule 19. *See* Fed. R. Civ. P. 12(b)(7).

## II.  Discussion

### A.  Tribal Court Jurisdiction Under the Consensual Relationship Exception

We are the first federal appellate court to confront whether a tribal court possessed subject matter jurisdiction over a divorce between a tribe member and nonmember spouse that resided outside the reservation during their marriage. *Cf. Sanders v. Robinson*, 864 F.2d 630, 633 (9th Cir. 1988) (affirming tribal court jurisdiction under *Montana* over a divorce involving a nonmember spouse who resided on the reservation with his member-wife and member-children). The district court found that the Tribal Court possessed jurisdiction under the consensual relationship exception. Because we cannot square its conclusion with authoritative precedent, we reverse.

"The extent of tribal court subject matter jurisdiction over claims against nonmembers of the [t]ribe is a question of federal law which we review de novo." *Atty's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of Miss.*, 609 F.3d 927, 934 (8th Cir. 2010) ["API"]. No federal statute or treaty specifically provides tribal courts with subject matter jurisdiction over divorce proceedings involving a nonmember spouse. Therefore, the Tribal Court's subject matter jurisdiction must derive from the Community's "retained or inherent sovereignty" over nonmembers, the scope of which is governed by *Montana* and the Supreme Court's subsequent tribal authority cases. *See Atkinson Trading Co., Inc. v. Shirley*, 532 U.S. 645, 649-50 (2001). Because "a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction," whether the Tribal Court had subject matter jurisdiction over the parties' divorce turns on the scope of the Community's power to regulate McGowan. *See Strate v. A-1 Contractors*, 520 U.S. 438, 453 (1997).

"[T]ribes do not, as a general matter, possess authority over non-Indians who come within their borders," such that "efforts by a tribe to regulate nonmembers," like McGowan, "are presumptively invalid." *See Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 328, 330 (2008). In *Montana*, the Supreme Court

recognized two exceptions to this rule.  *See* 450 U.S. 565-66.  First, the consensual relationship exception permits a tribe to "regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements."  *Id.*  Second, the tribal sovereignty exception recognizes that a tribe has the "inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."  *Id.* at 566.  The burden rests on Tix to establish that one of these exceptions vested the Tribal Court with jurisdiction to hear his divorce petition against McGowan.  *See Plains Com.*, 554 U.S. at 330.

That burden is difficult to meet.  In *Plains Commerce*, the Supreme Court clarified that the *Montana* exceptions are "limited" ones and "cannot be construed in a manner that would swallow the rule [against tribal jurisdiction] or severely shrink it."  *Id.* at 330 (citation modified).  Accordingly, the Court narrowed the scope of the exceptions in light of "the liberty interests of nonmembers."  *Id.* at 334.  Specifically, both exceptions permit tribal regulation of nonmembers only "to the extent necessary to protect tribal self-government and to control internal relations."  *Id.* at 332 (citation modified).  Likewise, tribes have limited, if any, authority to regulate nonmember conduct or property outside the reservation.  *Id.* at 333 ("Tellingly, with only 'one minor exception [involving conduct on reservation land], we have never upheld under *Montana* the extension of tribal civil authority over nonmembers on *non-Indian land*.'" (quoting *Nevada v. Hicks*, 533 U.S. 353, 360 (2001)); *id.* at 332 ("*Montana* and its progeny permit tribal regulation of nonmember *conduct inside the reservation* that implicates the tribe's sovereign interests.") (emphasis added).

Accordingly, we have found that a "consensual relationship alone is not enough" to establish tribal jurisdiction over a nonmember.  *See Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1138 (8th Cir. 2019).  Rather, a nonmember's regulated conduct must have a "sufficient nexus" to the "consensual relationship"

such that the nonmember could anticipate tribal jurisdiction. *See API*, 609 F.3d at 941. Further, the exception allows tribes to exercise jurisdiction over nonmembers to the extent "necessary for tribal self-government or controlling internal relations." *See Kodiak Oil*, 932 F.3d at 1138.[5] Lastly, we have found its application to nonmember conduct outside the reservation plausible only where that conduct "arises out of and is intimately related to" a contract related to tribal lands or property. *See DISH Network Servs. v. Laducer*, 725 F.3d 877, 885-86 (8th Cir. 2013); *see also API*, 609 F.3d at 941 (remanding for district court to determine whether consensual relationship exception permitted tribal jurisdiction over claim that nonmembers converted funds owed under a contract governing tribal property).[6]

The district court concluded the consensual relationship exception permitted tribal adjudication of the parties' divorce because the parties' marriage constituted a

---

[5]Tix fails to address the effect of *Kodiak Oil* on his argument that we have not decided whether *Plains Commerce* established a substantive limit on the scope of the consensual relationship exception. Moreover, he mischaracterizes the interpretation of *Plains Commerce* we adopted in *Kodiak Oil* as a minority view among the circuits. The Sixth and Seventh Circuits agree that *Plains Commerce* narrowed the scope of the consensual relationship exception to tribal regulations that implicate a tribe's sovereign authority. *See NLRB v. Little River Band of Ottawa Indians Tribal Gov't*, 788 F.3d 537, 546 (6th Cir. 2015); *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 783 (7th Cir. 2014). The Fifth Circuit's decision in *Dolgencorp, Inc. v. Miss. Band of Choctaw Indians*, 746 F.3d 167 (5th Cir. 2014) was not to the contrary. There, the court held that *Plains Commerce* did not require "a showing that the specific [consensual] relationships implicate tribal governance and internal relations." *Id.* at 174 (citation modified). It took no position on whether the exception permits tribes to regulate nonmember conduct that does not implicate its sovereign interests. To date, only the Ninth Circuit has adopted Tix's view that *Plains Commerce* imposed no additional limits on the exception. *See Lexington Ins. Co. v. Smith*, 117 F.4th 1106, 1111-12 (9th Cir. 2024).

[6]To the extent there is tension between our approach and the Court's statement in *Plains Commerce* that "*Montana* and its progeny permit tribal regulation of nonmember *conduct inside the reservation*," 554 U.S. at 332 (emphasis added), we need not resolve it here.

"consensual relationship" and McGowan could "reasonably anticipate" tribal jurisdiction. But the district court did not consider whether tribal adjudication of the parties' divorce was "necessary to protect tribal self-government and to control internal relations." *See Plains Com.*, 554 U.S. at 332 (citation modified); *see also Kodiak Oil*, 932 F.3d at 1138. Nor did it evaluate whether the parties' marriage bore a sufficient relationship to tribal lands or property to justify the Tribal Court's disposition of a case involving a nonmember's conduct and property outside the reservation. *See DISH Network*, 725 F.3d at 885-86. Therefore, even if the district court's conclusions were correct,[7] they did not establish the Tribal Court's subject matter jurisdiction.

Nonetheless, Tix asserts we should affirm because the requirements for tribal court jurisdiction that the district court failed to address are satisfied in the record. Specifically, he contends that a sufficient relationship existed between the parties' marriage and Community lands or property and that tribal jurisdiction over the parties' divorce was "necessary to protect tribal self-government." These assertions fail.

First, the parties' marriage had no more than a *de minimis* relationship with Community lands or property. Unlike the analogous cases where courts have found tribal jurisdiction, the parties did not marry on the Community's reservation or ever

---

[7]Whether a marriage constitutes a "consensual relationship" under the exception is not cut-and-dry. There is a split of persuasive authority on the issue. *Compare In re J.D.M.C.*, 739 N.W.2d 796, 809 (S.D. 2007) (holding that "marrying a tribal member" does not qualify as a consensual relationship) *with Sanders*, 864 F.2d at 632-33 (implying a marriage to tribe member qualifies as a consensual relationship). The Supreme Court also has not settled whether the consensual relationship exception may apply to a noncommercial agreement between private parties. *See Montana*, 450 U.S. at 565 (explaining that the exception applies to "consensual relationships . . . through commercial dealing, contracts, leases, or other arrangements"); *Plains Com.*, 554 U.S. at 332-33 (noting that cases applying the exception have involved commercial activity). Given the clearer grounds for reversal before us, we reserve our first impression of these issues for another case.

reside there. *Cf. Sanders*, 864 F.2d at 633; *Turpen v. Muckleshoot Tribal Ct.*, No. C22-0496-JCC, 2023 WL 4492250, at *3 (W.D. Wash. July 12, 2023) ("Prior to the marriage, [the parties] lived together on the Muckleshoot Reservation . . . ."). They also did not enter as a married couple into any contracts or formal arrangements related to Community property or activities on Community land. *Cf. Turpen*, 2023 WL 4492250, at *1 (affirming tribal court jurisdiction over divorce where parties "acting as a married couple, executed a deed of trust and pay back agreement [with Tribe]" concerning the marital home). Tix also does not suggest that the parties' marital status was of legal significance to their occasional visits to the reservation, their children's enrollment in the Community, or their reimbursement by the Community for their children's educational expenses.

Even so, Tix asserts that the parties' reliance on the Community's "per capita payments" and tribal insurance benefits reflected a sufficient connection to tribal property. But, as the Tribal Court noted, Tix received "per capita payments" directly from the Community as a right of membership. His marriage to McGowan did not affect either his entitlement to or the amount of these payments. On the contrary, the Community's Domestic Relations Ordinance defines "per capita payments" as "separate" rather than "marital" property and prohibits the Tribal Court from including them in its calculation of a member's spousal support obligation. We cannot conclude the parties' marriage had a legally relevant relationship to Tix's receipt of income that the Community classifies as a "personal"—not marital— "benefit." Likewise, McGowan's reliance on tribal insurance benefits, standing alone, is insufficient. Although contingent on marital status, her receipt of these benefits reflects a connection to tribal property of a more limited and incidental character than what has typically justified tribal jurisdiction, such as residing on the reservation. *See, e.g.*, *Sanders*, 864 F.2d at 633; *Turpen*, 2023 WL 4492250, at *3.

Second, the Tribal Court's exercise of jurisdiction over the parties' divorce was not "necessary to protect tribal self-government or to control internal relations." *See Kodiak Oil*, 932 F.3d at 1138. Contending otherwise, Tix asserts that tribal adjudication of Tix's divorce petition served the Community's self-governance

-10-

interests in the "care and custody of tribal children" and the allocation of tribal assets. Although we accept that proposition, we conclude that tribal jurisdiction was unnecessary to protect those interests.

For one, the parties' divorce did not require the allocation of Community resources. The divorce order primarily addressed the division and distribution of non-Community assets, such as the parties' bank account holdings, marital home, vehicles, and other personal property situated outside Community lands. Tix counters that any assets derived from or acquired using his income from "per capita payments" remained, "in part, tribal property." That assertion, however, has no basis in Community law, which describes "per capita payments" as "the collective property of the Community *until and unless they are distributed to qualified community members . . . .*" *See* Community Judicial Code Tit. 3, Ch. III, § 6(d) (emphasis added). Tix also argues that the adjudication of his child and spousal support obligations affects the allocation of "future tribal per capita payments," a matter of tribal resources that must remain under the Community's control. Although we agree that not-yet distributed "per capita payments" are the "property of the Community," we reject Tix's contention that post-divorce spousal support obligations affect the allocation of that property. The record does not indicate that members' spousal support obligations implicate the Community's power to distribute "per capita payments" under its laws and "at the discretion of the Community Council . . . ." Nor does the record establish that the Community could incur an obligation to pay spousal obligations imposed by a non-tribal court.[8]

---

[8]Tix refers to a case referenced by the Tribal Court in which "a Minnesota state court 'ignored' the prohibition on including per capita payments in spousal support, resulting in a directive to the Community to pay over [per capita benefits] to non-Community members . . . . When the Community balked at doing so . . . *the Community member was then brought into civil contempt penalties in state court and incarcerated.*" The Tribal Court did not supply a citation to this case, but, assuming its recitation of the facts is correct, it does not suggest that the Community is at risk of legal liability for spousal support obligations imposed on a member by a Minnesota court. Minnesota law is clear that liability for support obligations rests only with the obliged party. *See, e.g.*, *Hopp v. Hopp*, 279 Minn. 170, 174-76 (1968).

Therefore, we see no basis for concluding that tribal jurisdiction was needed to protect the Community's legitimate interest in controlling its resources.

The Tribal Court's exercise of authority over McGowan also went far "beyond what is necessary to protect" the Community's interest in the care and custody of member children. *See Montana*, 450 U.S. at 564. The divorce order makes this clear. The Tribal Court not only distributed McGowan's non-tribal property, but also imposed restrictions on her conduct outside tribal lands that we doubt the Community could impose via legislation. *See Strate*, 520 U.S. at 453 ("[A] tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction."). For instance, the order touches upon McGowan's sleep arrangements for the two youngest children and regulates her speech around her children on topics such as the children's "Native American/Dakota culture" and Tix. It also contains provisions making McGowan "responsible" not just for her own speech but "for the comments of . . . third parties that [she] allow[s] around the children" on those topics. Tix supplies no authority for the proposition that the Community's interest in the care of the parties' children necessitated such invasive exercises of authority over their nonmember mother outside the reservation. We find such a need to be particularly implausible given the children have neither lived on Community lands nor been regular participants in tribal life. We also cannot square the purported necessity of tribal divorce adjudication in these circumstances with the conception of tribal sovereignty adopted by Congress in the Indian Child Welfare Act, which exempts divorces from its general mandate of tribal participation in matters involving the custody and care of Indian children. *See* 25 U.S.C. §§ 1903(1), 1911(b).

Therefore, Tix has not met our requirements for establishing the Tribal Court's jurisdiction over his divorce petition under the consensual relationship exception.

_____

Accordingly, in that case, the Community member—not the Community—faced penalties for failing to meet his support obligations.

## B. Alternative Bases for Tribal Court Jurisdiction

Tix, with support from several amici, offers three additional bases for the Tribal Court's subject matter jurisdiction. He first contends that the Tribal Court had subject matter jurisdiction pursuant to the Community's inherent authority over family law matters involving tribal members. Second, he contends the Tribal Court was empowered to adjudicate the divorce pursuant to its *in rem* authority to determine the legal statuses of tribal members and disposition of tribal property. Third, he argues the Tribal Court retained subject matter jurisdiction under *Montana*'s tribal sovereignty exception. Tix asserts that we may affirm the district court based on any one of these purported sources of tribal jurisdiction.

At the outset, we note that Tix failed to present his "inherent authority" or *in rem* arguments to the district court. He also conceded below that the tribal sovereignty exception did not apply to this case.[9] Nonetheless, Tix contends that our general rule against considering arguments raised for the first time on appeal does not apply because his new arguments relate to the unwaivable issue of subject matter jurisdiction. This conflates the issue of federal subject matter jurisdiction with that of tribal court jurisdiction. Although a party cannot waive arguments concerning the former, Tix cites no case law suggesting we must entertain new arguments related to the latter. The Fifth Circuit has rejected that proposition. *See Dolgencorp, Inc*, 746 F.3d at 176-77 (finding that arguments against tribal court subject matter jurisdiction that were not presented to the district court were waived). The logic of our sister circuit applies with greater force to arguments in support of a tribal court's "presumptively invalid" exercise of jurisdiction over a nonmember. *See Plains Com.*, 554 U.S. at 330.

---

[9]In his motion in opposition to summary judgment, Tix asserted, "The applicable *Montana* prong that allows the exercise of jurisdiction over the nonmember in the case at hand *is the first prong*: a tribe may regulate the activities of nonmembers who enter into consensual relationships with the tribe or its members through commercial dealing, contracts, leases or other arrangements." Mot. Opp'n. to Pl.'s Mot. Summ. J. at 11 (emphasis added).

Even so, we may "consider a newly raised argument if it is purely legal and requires no additional factual development," and we may "affirm the district court's grant of a motion for summary judgment on any basis supported by the record." *United States v. Hirani*, 824 F.3d 741, 751 (8th Cir. 2016) (citation modified). Therefore, we retain the discretion to consider Tix's new theories of jurisdiction, notwithstanding his failure to preserve them, because they are purely legal and in support of affirmance. We nonetheless conclude that these theories provide no basis for the Tribal Court's subject matter jurisdiction.

As Tix conceded below, *Montana*'s tribal sovereignty exception is not a basis for the Tribal Court's jurisdiction. The exception does not confer authority on tribes to regulate nonmember conduct or property outside the reservation. *See Hornell Brewing Co.*, 133 F.3d at 1091-92. Moreover, the Community's *in rem* authority over tribe members and tribal property, to the extent it exists, cannot establish the Tribal Court's subject matter jurisdiction over a dispute concerning the distribution of non-tribal property and regulation of nonmember conduct. *See supra* Section II(A). Likewise, any inherent authority the Community has over family law matters involving tribal members would not be a plausible source of tribal authority to regulate nonmember conduct and non-tribal property. *See Montana*, 450 U.S. at 565. ("[T]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe.").

Because Tix fails to meet his burden of establishing that one of the *Montana* exceptions permitted tribal jurisdiction, the Tribal Court lacked subject matter jurisdiction over the parties' divorce.

### C.   Motion to Dismiss Under Rule 19

Notwithstanding the Tribal Court's lack of jurisdiction, Tix, with support from the Community as an amicus, argues that Rule 19 requires we affirm the dismissal of McGowan's complaint because the Community was a required party to her case that could not be joined due to its sovereign immunity from suit. *See* Fed.

R. Civ. P. 12(b)(7). Tix moved for dismissal on this basis below, but the district court mooted the issue by dismissing McGowan's case on jurisdictional grounds. Now Tix asks us to decide the issue in the first instance, a departure from our typical practice. *See, e.g.*, *Fort Yates Pub. Sch. Dist. No. 4 v. Murphy ex rel. C.M.B.*, 786 F.3d 662, 671-72 (8th Cir. 2015) (remanding issue of dismissal on Rule 19 grounds after concluding tribal court lacked subject matter jurisdiction). However, given the undisputed factual record and the significant overlap between the parties' arguments regarding Rule 19 and the Tribal Court's jurisdiction, this is the rare case where such a departure is appropriate. *See Phelps-Roper v. Troutman*, 712 F.3d 412, 417 (8th Cir. 2013) (noting we may reach merits of "purely legal issues" in first instance "in the interest of judicial economy"). We conclude the Community was not a required party to McGowan's suit under Rule 19.

> Rule 19(a)(1) requires that a party be joined to a lawsuit where:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). If a required party under Rule 19(a) cannot be joined, Rule 19(b) calls upon courts to determine "whether in equity and good conscience, the action should proceed among the existing parties or should be dismissed" based on several factors, including the extent to which a judgment would result in prejudice and provide adequate relief. *See* Fed. R. Civ. P. 19(b). McGowan does not dispute that the Community cannot be joined to her action due to its sovereign immunity from suit.

Tix contends the Community is a required party under Rule 19(a)(1)(B) because it "has an interest related to the subject of [McGowan's] action" and proceeding in its absence leaves him "at risk of inconsistent obligations." Specifically, he reiterates the Community has a "property interest" in the distribution of its "per capita payments," and claims he may "face[] the possibility of imprisonment if the state and tribal courts issue conflicting rulings" on the distribution of those payments. We have already rejected the former argument. *See supra* Section II(A). We also find no basis for the latter. In light of our ruling, neither Tix nor McGowan have any obligations under the Tribal Court's divorce order, which is null and void given the court's lack of subject matter jurisdiction. The only divorce-related obligations Tix may incur moving forward would be those imposed by a Minnesota state court in a future divorce action. Moreover, as we have already explained, Tix has not supplied sufficient support for the contention that his future obligations may affect the Community's faithful application of its laws concerning tribal property. *See supra* Section II(A) & note 8. Therefore, we reject Tix's contention that Rule 19 requires dismissal of McGowan's complaint.

## III.  Conclusion

Accordingly, we reverse the district court's grant of summary judgment to Tix and dismissal of McGowan's complaint. We remand to the district court with instructions to enter an order stating the Tribal Court lacked subject matter jurisdiction over the parties' divorce and enjoining Tix from seeking to enforce the Tribal Court's divorce order.

_____